***********
The undersigned have reviewed the Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and arguments of the parties. In addition, the parties have submitted a consent Opinion and Award for consideration by the full Commission reflecting agreed modifications to the original Opinion and Award of the deputy commissioner.
 ***********
The full Commission finds as finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee is Russell Gardner.
2. The employer is Firestone Fibers and Textiles.
3. The employer is self-insured and the servicing agent is Gallagher Bassett Services, Inc.
4. The employer-employee relationship existed at all relevant times.
5. The average weekly wage is $539.21 yielding a weekly compensation rate of $359.49. There was a Form 21 approved by the Commission on 3/23/99 and a Form 28B was filed on 3/29/99 stating that the last check forwarded was 3/29/99.
6. The defendant-employer regularly employs three or more employees and all parties are bound by the North Carolina Workers' Compensation Act.
7. A packet of Industrial Commission forms was marked as stipulated exhibit 1 and received into evidence.
8. A packet of medical records prepared by plaintiff was marked as stipulated exhibit 2 and received into evidence.
9. A packet of medical records prepared by the defendant was marked as stipulated exhibit 3 and received into evidence.
10. Subsequent to the hearing, a packet of medical records prepared by the defendant was marked as stipulated exhibit 4 and received into evidence.
 ***********
Based upon the evidence of record and findings of fact found by the Deputy Commissioner, the full Commission finds as follows:
 FINDINGS OF FACT
1. Prior to September 25, 1996, plaintiff did not have a history of back problems.
2. On September 25, 1996, plaintiff sustained an admittedly compensable injury to his back when he bent down to pick up some spools. As a result of the September 25, 1996 injury by accident, plaintiff aggravated the degenerative disc disease that he had at the L5-S1 level and the L3-4 level. Plaintiff also sustained a herniated disc at the L4-5 level in his lower back.
3. On September 27, 1996, plaintiff began a two-year period of conservative treatment for his compensable back injury when he sought treatment at River Wood Family Medicine.
4. A February 20, 1998 MRI revealed that plaintiff had sustained a disc bulge at the L5-S1 level, a central disc protrusion at the L4-5 level and a mild disc bulge on the left at the L3-4 level. On March 16, 1998, Dr. Humble recorded that it was his impression that the source of plaintiff's pain was coming from the L3-4 level, the L4-5 level and the L5-S1 level.
5. As a result of the September 25, 1996 admittedly compensable injury by accident, plaintiff was unable to earn any wages beginning April 27, 1998 through October 4, 1998. Defendant paid compensation in the amount of $359.49 per week during this time period.
6. As a result of the September 25, 1996 admittedly compensable injury to his back, plaintiff underwent an L4-5 discectomy on or about July 18, 1998.
7. During the surgery performed by Dr. Humble on or about July 18, 1998, plaintiff sustained a second degree burn on the lateral part of is leg that measured seven to eight inches in length.
8. On December 16, 1998, plaintiff was released by Dr. Humble with no plan for further treatment. Dr. Humble rated plaintiff's back injury as 12 and 1/2 percent. At the time of this release, plaintiff was still experiencing ongoing back pain and occasional leg pain.
9. On January 11, 1999, plaintiff entered into a written agreement with the defendant whereby the defendant agreed to pay permanent partial disability compensation in the amount of $359.49 beginning January 5, 1999 and continuing for 37.5 weeks. This agreement was prepared on an Industrial Commission Form 21 and was approved by the Industrial Commission on March 23, 1999. In this agreement, the defendant admitted that plaintiff had sustained an injury by accident on September 25, 1996 resulting in a back injury to the plaintiff. The agreement did not specify what the particular injury was to plaintiff's back.
10. On February 15, 1999, plaintiff returned to the Riverwood Medical Associates for treatment for ongoing pain in his lower back.
11. On March 29, 1999, Ms. Gary prepared a Form 28B reflecting payment of plaintiff's permanent partial disability rating, which was paid in a lump sum at plaintiff' s request.
12. From February 15, 1999 to March 2, 2000, Riverwood Medical Associates directed a conservative course of treatment for plaintiff's ongoing back pain that included medications and an additional regimen of physical therapy.
13. On March 16, 2000, plaintiff began a course of treatment under the direction of Dr. Gudeman. Upon reviewing an April 9, 2000 MRI, Dr. Gudeman determined that plaintiff had sustained a recurrent disc herniation at the L4-5 level and degenerative changes at L5-S1 with bilateral mild neural foraminal narrowing.
14. Based upon Dr. Gudeman's opinion that he had sustained a recurrent disc herniation, the plaintiff without counsel filed a Form 33 with the Industrial Commission dated May 2, 2000 requesting a hearing in order to receive medical treatment. Dr. Gudeman had recommended that plaintiff undergo a second surgery or epidural injections. Both of these procedures would potentially involve plaintiff temporarily being unable to earn any wages during recuperation but plaintiff did not know for what time period and for how long so he reported on the Form 33 that he did not know what compensation that he was seeking for days missed.
15. As a direct and natural result of the September 25, 1996 compensable injury by accident, beginning on May 26, 2000, plaintiff began a course of treatment for his lower back with the Southeast Pain Clinic that included a series of epidural injection and eventually a facet joint injection. This course of treatment was reasonably necessary to help relieve plaintiff's pain. While this treatment provided plaintiff some relief, it failed to alleviate plaintiff's pain to a manageable level. Plaintiff utilized his private health insurance to pay for this treatment.
16. On October 20, 2000, plaintiff's counsel prepared a motion seeking an administrative ruling that plaintiff had sustained a change of condition.
17. From May 29, 2000 to November 16, 2000, plaintiff was treated by Dr. Petty at Carolina Neurosurgery and Spine. This course of treatment included a regimen of medications and a lumbar myelogram. The treatment provided by Dr. Petty was reasonably necessary to help plaintiff relieve his pain.
18. As a direct and natural result of the September 25, 1996 compensable injury by accident, Dr. Gudeman performed a lumbar decompression and microdiscectomy with a partial laminectomy removing part of the bone of L4-5 with three operations on the left, a right L4-5 microdiscectomy, a bilateral foraminotomy, a left L4-5 exploration and a right L3-4 laminotomy on May 29, 2001. These surgeries were reasonably necessary to effect a cure and/or relieve plaintiff's pain.
19. As a direct and natural result of the September 25, 1996 compensable injury by accident and the surgeries performed by Dr. Gudeman, plaintiff was unable to earn any wages in any employment beginning May 29, 2001 and continuing through August 30, 2001.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has sustained a change of condition causally related to the September 25, 1996 compensable injury by accident within the two year period following September 28, 1999, the date that defendant could issue plaintiff's last indemnity check. On May 29, 2001, plaintiff became physically unable to earn any wages as a result of the surgery performed by Dr. Gudeman. N.C. Gen. Stat. § 97-47. Plaintiff's period of total disability ended on August 30, 2001.
2. Plaintiff is entitled to have defendants pay for medical treatment arising from the September 25, 1996 injury to the extent it tends or tended to effect a cure, give relief or lessen plaintiff's disability for at least up to two years following September 28, 1999. N.C. Gen. Stat. § 97-47.1.
3. Plaintiff is entitled to receive temporary total disability compensation in the amount of $359.49 per week from May 29, 2001 through and including August 30, 2001. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the full Commission modifies the opinion and award of the deputy commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in the amount of $359.49 per week directly to the plaintiff for the period beginning May 29, 2001 through and including August 30, 2001. In that these benefits are all accrued, they shall be paid in a lump sum subject to an attorney's fee approved below.
2. Defendants shall pay for medical treatment incurred as a result of the September 25, 1996 compensable injury, including the treatment provided by Southeast Pain Clinic, Dr. Petty and the surgeries performed by Dr. Gudeman.
3. A reasonable attorney's fee of 25 percent of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel to be deducted from said sum and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs, including expert witness fees, if not already paid, as approved by the Commission.
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING:
S/_____________
BERNADINE BALLANCE
COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
CONSENTED TO:
 S/____________________ Joseph B. Roberts, III Attorney for Plaintiff
 S/_________________ Henry C. Byrum, Jr. Attorney for Defendants